A11A1106. TURNER v. THE STATE.

(718 SE2d 545)

Smith, Presiding Judge.

A jury found Michael Lynn Turner guilty of rape. Following the denial of his amended motion for new trial, Turner appeals. He argues that he should have been allowed to testify about statements made to him by the victim and to cross-examine a witness concerning statements the witness posted about the victim on a social media website. For the following reasons, we affirm.

Construed in favor of the verdict, the evidence revealed that Turner lived with M. T., his 16-year-old daughter. M. T. invited the victim, who was also 16 years old, and another teenage girl to spend the night at her home. The victim's mother drove her to Turner's home, and when she arrived, M. T. and another girl were at the home. At some point, Turner arrived home with alcohol in his car and asked the three girls to retrieve it. Turner made margaritas for the girls and gave them shots of vodka. The victim testified that Turner also gave them a marijuana cigarette. She stated that she smoked it four times. Later in the evening, the victim "start[ed] to feel sick" and stumbled to M. T.'s bathroom, where she vomited on the bathroom floor. After she vomited again in the hallway because she could not walk or crawl, Turner assisted her back into M. T.'s bathroom. M. T., her friend, and Turner all laughed as the victim continued to vomit.

The next thing the victim remembered was waking up naked and face-down on the floor in Turner's bathroom. She stated that she felt "scared and sick, confused." Turner, sitting in the bathroom next to the victim, asked her "Would you like me to help you lay down? It might make you feel better." The victim, unable to talk, attempted to stand up and walk back to M. T.'s room, but she lost consciousness.

The victim testified that when she awoke, she was "in [Turner's] bed and he's on top of me, and I'm fully aware that we're having sex." Even though she was unable to open her eyes, she explained that she could feel "[h]is penis going in and out, inside me," and that

she could feel it "[b]ecause it hurts. It's rough." The victim stated that she "black[ed] in and out," could "feel [Turner] breathing on [her]," and that she could not move or fight him off. She stated further: "It's hot. He's laughing, he's talking, It's just scary, . . . I feel so weak . . . I can't do anything. I can't even hold my eyes open. I can't talk." She remembered specifically Turner laughing and grunting, "sexual grunting."

After again losing consciousness, the victim awoke still naked and in Turner's bed. Turner, also still naked, was standing next to the bed, and when the victim asked, "What's going on?," Turner told her, "Well, I had to bring you back here to clean you up." The victim then stumbled into Turner's bathroom, retrieved her clothes, and went to M. T.'s room for the remainder of the night.

The next day, Turner sent the victim several text messages including: "Im sry I hope ur ok," and "Please dnt say anything il do wht eva u want." Turner claimed that he sent the text messages to the victim because he was concerned that she "got pretty sick when she was drinking." Less than 48 hours after the incident, the victim made an outcry to her mother and explained what had occurred at Turner's home.

M. T. testified that on the night the girls were at her home, she asked Turner to purchase alcohol for them. She stated further that Turner made margaritas for the three of them, and that they also drank shots of vodka. M .T. claimed that after drinking the alcohol, she retrieved a marijuana cigarette from her room, and that she, the victim, and the other teenage girl smoked it on the front porch. She stated that after smoking the marijuana, the victim began vomiting in the hall and in her bathroom, eventually "pass[ing] out" on the bathroom floor, but that she did not remember much of what occurred after that because she also "passed out." M. T. explained that at some point during the night, she knocked on Turner's bedroom door and asked him if he knew where the victim was, and that Turner replied: "she'[ll] be there in a minute." M. T. went back to her own room, and when the victim came into the room shortly thereafter, she asked the victim what she was doing in Turner's room. M. T. testified that the victim responded, "Nothing," and went to sleep.

Turner testified in his own defense that he had sex with the victim but that it was consensual. He admitted that he provided the teenage girls with alcohol, but that he did so to deter them from drinking in the future because they would become sick and have a "real nasty hangover." But Turner denied providing the girls with marijuana. He testified that the victim became sick and vomited around 9:00 p.m. and that he cleaned up after her. He stated further that later in the evening, just after midnight, he went to take a

shower, and when he came out of the bathroom, the victim was lying on his bed naked "with her legs spread." Turner stated that the victim asked him for sex "around 35 times," and that he told her to put on her clothes. He explained that he told the victim "You were just throwing up all over yourself earlier . . . . The best thing I could suggest . . . is you take a shower . . . if you haven't changed your mind or whatever, . . . then we'll talk about it after that." After the victim took a shower, Turner claimed that she got back into his bed "like[ ] she lived there" and that the two of them had sex. When asked about the victim's state of awareness, Turner stated:

> she seemed like she was pretty aware to me . . . she might have had a little buzz or something. That's when I suggested the shower. But . . . I had no doubt in my mind that she was totally aware of what she was doing by the time she got out of there. I never seen her stumbling, or having trouble walking, or anything, communicating.

1. Turner argues that the trial court should have allowed him to testify to certain statements the victim made to him. Turner sought to testify that the victim told him: "That's what I like about having sex with older men. They know what they're doing," and, "The only reason I'm doing this is because [my boyfriend] hasn't f'd me in two weeks." He contends these statements are essential to his sole defense that the victim consented to having sexual intercourse with him. The trial court ruled that the statements were barred by the Rape Shield Statute.

The Rape Shield Statute "is a strong legislative attempt to protect the victim-prosecutrix in rape cases by the exclusion of evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused." (Citation, punctuation and footnote omitted.) *Smith v. State*, 294 Ga. App. 692, 698 (3) (670 SE2d 191) (2008).

Specifically, OCGA § 24-2-3 (a) provides:

> In any prosecution for a violation of Code Section 16-6-1, relating to rape; Code Section 16-6-2, relating to aggravated sodomy; Code Section 16-6-4, relating to aggravated child molestation; or Code Section 16-6-22.2, relating to aggravated sexual battery, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited

to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.

OCGA § 24-2-3 (b) provides the only exceptions to this general rule: such evidence may be admitted where the past sexual behavior of the victim directly involves the *accused's* participation and supports an inference that the accused could have reasonably believed that the victim had consented to the conduct at issue. The evidence may also be admitted on a finding that it "is so highly material that it will substantially support a conclusion that the accused reasonably believed that the complaining witness consented to the conduct complained of and that justice mandates the admission of such evidence." OCGA § 24-2-3 (c) (2). "We review the trial court's exclusion of the evidence for abuse of discretion." (Citation omitted.) *Davis v. State*, 235 Ga. App. 362, 363 (1) (509 SE2d 655) (1998).

The statements Turner alleges the victim made here do not fall within either exception enumerated in OCGA § 24-2-3 (b) and (c) and are prohibited by the Rape Shield Statute because they both make reference to the victim's past sexual behavior by implying that the victim had sex in the past with her boyfriend and with older men. See *Smith*, supra, 294 Ga. App. at 698 (3); see also *Myers v. State*, 160 Ga. App. 685, 686 (2) (288 SE2d 27) (1981) (that victim had reputation for partying equates to prior sexual behavior). There was testimony that the victim was intoxicated, in and out of consciousness, and unable to move. See *Davis*, supra. Based on the facts and circumstances here, Turner would not have "reasonably believed" that the victim consented to sex. See, e.g., id. The trial court therefore did not abuse its discretion in excluding the testimony proffered. It simply was not "so highly material" that it supported a reasonable belief in consent.

2. Turner argues that he should have been allowed to cross-examine M. T. about a comment she posted on her MySpace page concerning the victim. During trial, the prosecutor asked M. T. to read a copy of a post from her MySpace page:

| | |
|---|---|
| Prosecutor: | All right. Now on a Myspace page, you get to post information about you, correct? |
| M. T.: | Yes, ma'am. |
| Prosecutor: | All right. And you get to post general information, is that right? |
| M. T.: | Yes, ma'am. |
| Prosecutor: | General information. Start with the word "looking." Read that to me, please. |

| M. T.: | "Looking forward to seeing that redheaded slut." |
| Prosecutor: | Who were you talking about? |
| M. T.: | [The victim]. |

On cross-examination, Turner sought to question M. T. about the comment she posted, and out of the presence of the jury made a proffer of M. T.'s testimony:

| Trial counsel: | And you recall that they showed a picture of [MySpace], and it said in there that you referred to [the victim] as a redheaded slut? |
| M. T.: | Yes, sir. |
| Trial counsel: | All right. Why did you refer to her in your [MySpace] as a redheaded slut? |
| M. T.: | Because she had told me . . . about her sleeping around. |
| Trial counsel: | Having sex with other men? |
| M. T.: | Yes, sir. |

Turner argues that the State on direct examination sought to discredit M. T. by showing that she "hated" the victim and would probably testify favorably for Turner. He contends that he should have been allowed on cross-examination to rehabilitate M. T. by allowing her to testify about why she posted the comment about the victim.

The testimony Turner sought to elicit by cross-examination, that the victim had sex with other men, is the very type of evidence prohibited by the Rape Shield Statute. See *Brown v. State*, 260 Ga. App. 77, 80-81 (4) (579 SE2d 87) (2003). Its two exceptions "are exclusive," *Lamar v. State*, 243 Ga. 401, 402 (2) (254 SE2d 353) (1979), and "it is well settled that the Rape Shield Statute . . . supersedes all evidentiary exceptions." (Citations and punctuation omitted.) *Logan v. State*, 212 Ga. App. 734, 735-736 (1) (a) (442 SE2d 883) (1994). "The defendant's right to confront and cross-examine witnesses concerning the victim's past sexual behavior with others must bow to accommodate the [S]tate's interest in the Rape Shield Statute." *Harris v. State*, 257 Ga. 666, 668 (1) (c) (362 SE2d 211) (1987). Therefore, we find no merit in Turner's argument that the State "opened the door" to evidence which Turner admits was protected by the Rape Shield Statute. The trial court did not err in refusing to allow this testimony.

*Judgment affirmed. Mikell and Dillard, JJ., concur.*

DECIDED NOVEMBER 1, 2011.

*Buford & Buford, Floyd M. Buford, Jr.*, for appellant.
*Fredric D. Bright, District Attorney, Keagan W. Goodrich, Assistant District Attorney*, for appellee.