**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**January 23, 2020**

# In the Court of Appeals of Georgia

A19A1989. TORRES v. THE STATE.

BARNES, Presiding Judge.

A Walton County jury found Andrew Blas Torres guilty of one count of forcible rape, four counts of incest, two counts of aggravated child molestation, and one count of aggravated sexual battery. Torres filed a motion for new trial, which the trial court denied. On appeal, Torres challenges the sufficiency of the evidence. Torres also contends that the trial court erred in failing to excuse a juror for cause, in excluding evidence of a prior sexual incident between the victim and her older brother, in allowing a police investigator to testify about Torres's failure to meet with her for an interview, in failing to grant a mistrial after a witness referred to Torres's pretrial incarceration on the current charges, and in failing to merge two counts of incest. For the reasons discussed more fully below, we reject Torres's claims of error.

However, because the trial court did not impose split sentences of incarceration and probation on the four counts of incest upon which Torres was convicted and separately sentenced, Torres's sentences on those counts are void and must be corrected. Accordingly, we vacate Torres's sentences imposed on the four incest counts and remand for resentencing.

"After a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant is no longer presumed innocent." *Carcamo v. State*, 348 Ga. App. 383, 383 (823 SE2d 68) (2019). So viewed, the evidence showed that Torres and his wife had three children, including a daughter born in August 1998. The daughter, who was eighteen years old at the time of trial, testified that Torres sexually abused her from when she was eight years old until she was sixteen years old. She discussed the following incidents of sexual abuse during the course of her testimony.

Throughout her childhood, the victim lived in several different states because of her parents' work situations. When the victim was eight years old and in the third grade, the family lived in Colorado, and the victim testified that the sexual abuse began there. The victim remembered being naked on the couch with Torres when he told her they were going to play a game. Torres then began playing "patty cake" with

the victim while she straddled him on the couch with his genitals touching her genitals. The victim recalled subsequent incidents of sexual abuse in Colorado in which Torres performed oral sodomy on her, touched her genitals, and penetrated her vagina with his fingers.

The family moved to Nevada when the victim was nine years old and in the fourth grade. The victim did not recall any physical contact with Torres in Nevada but did remember them being naked together on the couch.

The family then moved from Nevada to Georgia. The trip to Georgia took three days by car, and the family stayed in hotels along the way. One night, while the rest of the family was asleep, Torres awakened the victim and took her to the bathroom in their hotel room. Once in the bathroom, Torres undressed the victim and took off his own clothes, kissed her, touched her chest and genital areas, inserted his fingers into her vagina, and attempted to have sexual intercourse with her but stopped when she told him it hurt.

After arriving in Georgia, the family initially lived in a trailer home but then moved to a residence in Walton County in 2008, when the victim was ten years old and beginning fifth grade.[1] At the residence, Torres would sexually abuse the victim

---

[1] Torres's mother and stepfather also lived at the residence.

3

in a room that served as his home office. The victim recalled that Torres would invite her into his office and would shut and lock the door. Torres then would show the victim pornographic video games on his computer while she sat on his lap, and he would touch the victim's genitals, sometimes reaching under her clothes and sometimes undressing her. There also were occasions in the office where Torres would insert his fingers into the victim's vagina, would perform oral sodomy on her, and would have her perform oral sodomy on him. These incidents of sexual abuse occurred once or twice every week in Torres's office in 2008 and 2009 when the victim was in the fifth and sixth grades and thus was ten and eleven years old.

In 2010, Torres moved to Texas, and the victim and her sister lived with him there while the other family members lived in Georgia. The victim was twelve years old and in seventh grade. Torres continued to sexually abuse the victim while they lived in Texas, including kissing her, penetrating her with his fingers, requiring her to perform oral sodomy on him, and placing her hand on his penis. Torres also had sexual intercourse with her.

In February 2011, while the twelve-year-old victim was still in the seventh grade, Torres moved with his daughters back to the Walton County residence where the other family members lived. After they returned to Georgia, Torres sexually

4

abused the victim during the remainder of her seventh grade school year and throughout her eight grade school year. The sexual abuse occurred in Torres's home office and included acts of oral sodomy and sexual intercourse.

The victim was home schooled for her ninth and tenth grade school years, and the sexual abuse continued during that time period, which lasted from the summer of 2012 until the summer of 2014. The victim would play video games in Torres's office, and Torres would require her to perform oral sodomy on him and have sexual intercourse. In one such incident, Torres grabbed the victim's arms, pushed her down, and pinned her arms above her head while having sexual intercourse with her.

As the victim got older, she began to resist Torres's efforts to sexually abuse her, and the number of encounters decreased. The victim attended the local high school for her junior year, and the last incident of sexual contact occurred in November 2014 of that school year, when the victim was 16 years old. During that incident, Torres penetrated the victim with his fingers and performed oral sodomy on her. She told him to stop because it hurt, but he ignored her. The victim was able to get up and leave the office. After that November 2014 incident, Torres continued to attempt to have sexual contact with the victim, but from that point forward she ignored him or did not "give into it."

5

During the years of abuse, the victim became increasingly angry with Torres and experienced feelings of self-hatred, disgust, lethargy, anxiety, and depression. Her grades at school began to fall, and she "slept all day." She would not eat and began cutting lines and words into her arm with a razor.

Torres became more angry and controlling over the victim as she got older, and he would frequently place her on restriction. Torres would not allow the victim to date or spend time with friends outside of school, and he would take away her cell phone for long periods of time.

Around the same time as the last sexual incident in November 2014, the victim began secretly dating a classmate. The victim was unable to see her boyfriend outside of school because of the restrictions placed on her by Torres. In late March 2015, Torres learned that the victim had a boyfriend, forbade her from continuing the relationship, and told her that she would be home schooled again her senior year. Scared that she would never see her boyfriend again and that she would be unable to "make it through the summer emotionally or mentally," the victim described some of the sexual abuse in a journal that she gave to her boyfriend on the last school day of her junior year, May 15, 2015. After reading the journal, the victim's boyfriend gave the journal to his mother to read, and early on the morning of May 16, 2015, the

6

victim's boyfriend and his mother picked up the victim from her home. Before leaving her home, the victim wrote notes to her family members disclosing the sexual abuse to them for the first time. After learning of the abuse from one of the notes, the victim's mother told Torres to leave the residence, and Torres left that day and never returned.

The police were contacted about the abuse, and an investigator with the Walton County Sheriff's Office arranged for a forensic interview to be conducted with the victim. During the recorded forensic interview that occurred on June 4, 2015, the victim was reticent but communicated that she had been sexually abused by Torres. That same day, the victim underwent a forensic medical examination, which revealed no evidence of sexual trauma. According to the nurse examiner, the absence of evidence of sexual trauma was not unusual in light of the amount of time that had passed since the last incident of reported abuse. The nurse examiner did observe that the victim had cut a curse word into her arm. Additionally, the victim began weekly sessions with a counselor, who diagnosed her with post-traumatic stress disorder ("PTSD") and treated her from June 2015 through December 2016.

Torres went to Texas the day that the victim disclosed the sexual abuse to her family members, and the police investigator thereafter attempted to set up a time to

meet with Torres and discuss the allegations. During a recorded phone call in October 2015, the investigator told Torres that she would like to speak with him in person about the case, and Torres responded that he was eager to speak with her to clear things up but claimed to be busy working out of state. Torres said that he might have some days off around the upcoming Thanksgiving holiday and would be happy to meet with the investigator if he could get the time off of work. Torres told the investigator that he wanted to resolve the matter and provide a statement. The investigator gave Torres her phone number so that he could call her when he was available for an interview. When the investigator later returned to her office after the Thanksgiving holiday, she found that Torres had left her a voice message on November 24 asking her to call him. She called Torres and left a voice message when she was unable to reach him, but Torres never returned her call and never contacted the investigator again. The investigator subsequently obtained an arrest warrant for Torres in February 2016, but authorities did not arrest him until June 2016 in Virginia.

Following his arrest, Torres was indicted on one count of forcible rape, four counts of incest, two counts of aggravated child molestation, and one count of aggravated sexual battery based on the sexual abuse that occurred in Walton County.

8

At the ensuing jury trial, the victim described how she was sexually abused by Torres and gave a chronology of the abuse, as set out above. The State also introduced the victim's recorded forensic interview, and called several additional witnesses, including the forensic interviewer, the nurse examiner, and the victim's counselor. Additionally, the investigator testified about, among other things, her efforts to arrange to meet with Torres before his arrest, and the State introduced the recorded October 2015 phone conversation between the investigator and Torres.

Several of the victim's family members also testified on behalf of the State. The victim's younger sister testified that she had not witnessed any sexual abuse, but that Torres and the victim were always in his office together with the door closed. The younger sister also testified that when she was 12 years old, Torres would come into the bathroom when she or the victim was taking a shower and would pull back the curtain while talking with them.

The victim's older brother testified that he did not know about the abuse, but he related that the victim was frequently alone with Torres in the office with the door locked, including in the middle of the night. The brother testified that on one occasion, he opened the door to the office when it was unlocked, and he saw Torres sitting in a chair with the victim leaning over him with her hands on Torres's legs.

9

According to the brother, the victim stood up from in front of Torres when the brother walked into the office.

The victim's mother testified that she had been unaware of the abuse, but that one time when the door to the home office had been locked, she knocked, Torres opened the door, and she saw the victim, who appeared upset, sitting on the floor near the couch. The mother testified that on another occasion, when the victim was 12 years old and living with Torres in Texas, Torres called the mother and asked her to tell the victim that it was okay for him to apply medicine to the victim's vagina, and he hung up on the mother when she told him that the victim could apply the medicine herself.

The State also presented extrinsic acts evidence that Torres had sexually abused two other victims. The older brother's girlfriend testified that she moved in with the family at their Walton County residence in June 2011, when she was 19 years old and had just given birth to the brother's child. The girlfriend described incidents in which Torres would call her into his office, give her alcohol, and attempt to initiate sexual contact with her. She testified that Torres ultimately forced her to perform oral sodomy on him and to have sexual intercourse on repeated occasions, and that he threatened to kick her out of the house and call child protective services

if she resisted or told anyone about the incidents. Additionally, Torres's younger stepsister testified that when she was 12 years old and Torres was 21 years old, Torres pushed her down on the couch, kissed her, rubbed his genitals against her, and put his hands up her shorts. She testified that he was forceful with her, but she kicked and yelled and was able to get away from him before he went any further.

Torres elected not to testify and did not call any witnesses. Following the close of evidence, the jury found Torres guilty of all of the charged offenses. The trial court sentenced Torres to four consecutive life sentences on the rape, aggravated child molestation, and aggravated sexual battery counts, followed by a consecutive 160 years in confinement predicated on the four incest counts. Torres filed a motion for new trial, which the trial court denied after conducting a hearing. This appeal followed.

1. Torres contends that the evidence was insufficient to support his convictions of the charged offenses. Specifically, Torres argues that "[t]he evidence presented by the State did not exclude the very reasonable hypothesis that the victim was not testifying truthfully and that her PTSD had an alternative cause." According to Torres, the evidence supported the alternative reasonable hypothesis that the victim fabricated the abuse allegations "in retaliation for being disciplined and not being

11

allowed to date her boyfriend." Torres emphasizes that "[v]irtually all of the direct evidence in this case came from the alleged victim," that no other family members claimed to have seen any acts of sexual abuse, that the victim delayed disclosing the abuse, and that there was no physical evidence corroborating her claims.

> When a defendant challenges the sufficiency of the evidence to support [his] criminal convictions, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Michael v. State*, 335 Ga. App. 579, 584 (1) (782 SE2d 479) (2016). See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Applying these principles, we conclude that the evidence presented at trial and summarized above was sufficient to entitle a rational jury to find Torres guilty beyond a reasonable doubt of the charged offenses. *Jackson*, 443 U.S. at 319 (III) (B). Although Torres argues that the evidence failed to exclude all reasonable hypotheses of his guilt, his "argument is without merit because the reasonable hypothesis rule applies only in the narrow context where all of the evidence against the accused was

12

circumstantial." (Punctuation and footnote omitted.) *Houseworth v. State*, 348 Ga. App. 119, 124 (1) (b) (820 SE2d 231) (2018). Here, there was direct evidence of the sexual abuse based on the testimony of the victim, and her testimony, standing alone, was sufficient to support Torres's convictions. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact. . . .").[2] Physical evidence of the sexual abuse was not required. See *Hutchinson v. State*, 287 Ga. App. 415, 417 (651 SE2d 523) (2007). And while Torres contends that the victim was untruthful, "[i]t is the function of the jury, rather than this Court, to weigh the evidence, resolve conflicts in the lay and expert testimony, and draw reasonable inferences from the evidence." (Citation and punctuation omitted.) *Michael*, 335 Ga. App. at 584 (1). Accordingly, there was sufficient evidence to support the verdict in this case.

---

[2] See also *Croft v. State*, 348 Ga. App. 21, 22 (1) (819 SE2d 550) (2018) (victim's testimony, standing alone, was sufficient to sustain convictions for child molestation, aggravated sexual battery convictions, and other crimes); *Jackson v. State*, 334 Ga. App. 469, 473 (2) (779 SE2d 700) (2015) (testimony of forcible rape victim sufficient to support conviction); *Smith v. State*, 320 Ga. App. 408, 410 (1) (a) (740 SE2d 174) (2013) ("The testimony of a victim of child molestation or aggravated child molestation need not be corroborated. The testimony of one witness is generally sufficient to establish a fact.") (punctuation and footnotes omitted); *Davenport v. State*, 316 Ga. App. 234, 236 (1) (a) (729 SE2d 442) (2012) (testimony of incest victim sufficient to establish a fact, even if uncorroborated).

2. Torres also maintains that the trial court erred in failing to excuse for cause a prospective juror who had been raped and who knew someone who committed suicide after being molested by her father. However, Torres used a peremptory strike to remove the prospective juror, and he has not shown that any of the jurors who ultimately served on his jury were unqualified. Pretermitting whether the trial court erred in failing to excuse the prospective juror for cause, we conclude that Torres has failed to show that he was harmed by the alleged error. See *Willis v. State*, 304 Ga. 686, 701-702 (11), 707 (11) (a) (820 SE2d 640) (2018) (overruling prior precedent and holding "that it is harmless error where a defendant's motion to excuse a prospective juror is erroneously denied but the juror is subsequently removed from the defendant's twelve-person jury by his or her use of a peremptory strike," and there is no showing on appeal "that one of the challenged jurors who served on [the defendant's] twelve-person jury was unqualified"); *Johnson v. State*, 348 Ga. App. 667, 678-679 (2) (824 SE2d 561) (2019) (applying *Willis* to conclude that defendant could not show that she was harmed by the trial court's failure to excuse for cause an allegedly biased prospective juror, where the defendant exercised a peremptory strike to remove the juror from the jury pool and did not argue on appeal "that any of the jurors who ultimately served on the jury at her trial were unqualified").

14

3. Torres argues that the trial court erred in granting the State's motion in limine to exclude under Georgia's Rape Shield Statute evidence that when the victim was seven years old and her older brother was eleven years old, her brother touched his genitals against her genitals when they were both naked in the bed. According to Torres, evidence of the prior sexual incident should have been admitted to allow the jury to evaluate whether that incident, rather than the sexual abuse by Torres, caused the behavioral symptoms exhibited by the victim that were consistent with PTSD. Torres further contends that evidence of the incident was admissible for impeachment purposes to show bias by the older brother.

"The trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." (Citation and punctuation omitted.) *Jones v. State*, 305 Ga. 750, 751 (2) (827 SE2d 879) (2019). Because the evidence of the prior sexual incident between the victim and her brother did not fit into a statutory exception contained in the Rape Shield Statute, we discern no abuse of discretion by the trial court in excluding evidence of that incident in this case.

Former OCGA § 24-4-412, Georgia's Rape Shield Statute applicable here,[3] states in part:

> In any prosecution for rape in violation of Code Section 16-6-1; . . . aggravated child molestation . . . in violation of Code Section 16-6-4; incest in violation of Code Section 16-6-22; . . . or aggravated sexual battery in violation of Code Section 16-6-22.2, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.

OCGA § 24-4-412 (a) (2013). Former OCGA § 24-4-412 (b) contains a single statutory exception to the Rape Shield Statute. That subsection provides that a defendant may introduce

> evidence relating to the past sexual behavior of the complaining witness . . . if the court . . . finds that the past sexual behavior directly involved

---

[3] OCGA § 24-4-412 was substantially revised by the General Assembly, effective April 18, 2019. See Ga. L. 2019, p. 81, §§ 5, 9. The revised version of the Rape Shield Statute applies "to any motion made or hearing or trial commenced on or after the effective date of this Act" and thus is inapplicable in the present case. Ga. L. 2019, p. 81, § 8.

16

the participation of the accused and finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution.

OCGA § 24-4-412 (b) (2013).[4]

As our Supreme Court recently explained in a case addressing the construction of former OCGA § 24-4-412, "a natural reading of the text of OCGA § 24-4-412 indicates that evidence of a complaining witness's past sexual behavior may not be introduced by any party at a trial involving a prosecution for certain sexual crimes

---

[4] The current version of OCGA § 24-4-412 (b) contains four statutory exceptions:

> (1) Evidence of specific instances of a victim's or complaining witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
> (2) Evidence of specific instances of a victim's or complaining witness's sexual behavior with respect to the defendant if it supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution;
> (3) Evidence of specific instances of a victim's or complaining witness's sexual behavior with respect to the defendant or another person if offered by the prosecutor; and
> (4) Evidence whose exclusion would violate the defendant's constitutional rights.

OCGA § 24-4-412 (b). See Ga. L. 2019, p. 81, § 5.

17

unless such evidence falls under the one specific exception contained in the statute itself." *White v. State*, 305 Ga. 111, 115 (1) (823 SE2d 794) (2019). And,

> the sole exception to the evidentiary restrictions contained in the Rape Shield Statute allows a defendant to introduce evidence of the complaining witness's past sexual behavior where such activities directly involved the defendant and supports an inference that the defendant "could have reasonably believed that the complaining witness *consented* to the conduct complained of in the prosecution." (Emphasis supplied.) OCGA § 24-4-412 (b).

*White*, 305 Ga. at 118 (2). Hence, if evidence of the witness's past sexual behavior falls outside the scope of the sole statutory exception contained in the former Rape Shield Statute, it is inadmissible, and appellate courts cannot write additional exceptions into the statutory framework. See id. See generally *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[S]tatutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law.") (citation and punctuation omitted).

Torres does not contend that evidence of the prior sexual incident between the victim and her older brother fell within the sole statutory exception contained in former OCGA § 24-4-412 (b). Rather, quoting *Marion v. State*, 206 Ga. App. 159, 159 (424 SE2d 838) (1992), Torres maintains that evidence of the prior sexual

18

incident was admissible "to establish other possible causes for the behavioral symptoms exhibited by the [victim]." However, in *White*, the Supreme Court held that "cases purporting to allow a relevance exception to the Rape Shield Statute for the admission into evidence of a complaining witness's past sexual behavior beyond that contained in OCGA § 24-4-412 (b) are hereby overruled to the extent that they do so." *White*, 305 Ga. at 118 (2). Among the cases expressly overruled was *Sutton v. State*, 336 Ga. App. 884, 885 (1) (785 SE2d 421) (2016), which, like *Marion*, held that evidence of a child's past sexual history was "admissible to show other possible causes for behavioral symptoms." See *White*, 305 Ga. at 119 (2), n. 8. Based on *White*, the *Marion* case is no longer good law, and Torres's reliance on it is misplaced.

Torres also argues that evidence of the prior sexual incident was admissible for impeachment purposes to show that the older brother, who testified at trial, was biased. But the Rape Shield Statute bars evidence of past sexual behavior that does not fit within the aforementioned statutory exception, irrespective of whether the defense seeks to introduce the prior sexual behavior as substantive evidence or for impeachment. See *Green v. State*, 291 Ga. 287, 290-291 (3) (728 SE2d 668) (2012) (Rape Shield Statute precluded defense from using victim's prior prostitution

19

conviction for impeachment); *Turner v. State*, 312 Ga. App. 315, 319 (2) (718 SE2d 545) (2011) (noting that "the Rape Shield Statute supersedes all evidentiary exceptions") (citation and punctuation omitted).[5]

Accordingly, the trial court acted within its discretion in granting the State's motion in limine to exclude evidence of the prior sexual incident between the victim and her older brother.

4. Torres contends that the trial court erred in allowing the police investigator to testify about Torres's failure to come forward for an interview with law enforcement prior to his arrest. We are unpersuaded.

---

[5] Quoting *Smith v. State*, 276 Ga. 263, 265 (2) (577 SE2d 548) (2003), Torres points out that "[t]he Confrontation Clause of the Sixth Amendment guarantees a defendant in a criminal case the right to show the possible bias of a witness by cross-examining him concerning pending criminal charges or a pending probation revocation." But that principle has no bearing on the present case, given that there was no evidence that the victim's older brother had pending charges relating to the prior sexual incident, which occurred approximately 11 years before the trial. See *Johnson v. State*, 244 Ga. App. 128, 131-132 (1) (534 SE2d 480) (2000) ("A criminal defendant has the right to cross-examine a witness concerning *pending* criminal charges against the witness in order to expose a witness' motivation in testifying, e.g., bias, partiality, or agreement between the government and the witness. . . . Absent such foundational facts such as a pending criminal charge about which the witness seeks assistance from the prosecution, there can be no cross-examination on such subject[.]") (citations and punctuation omitted; emphasis in original).

The State sought admission of evidence of Torres's pre-arrest conduct, namely, his departure from Georgia on the day that the victim disclosed the sexual abuse to her family, his failure to meet with the investigator to address the allegations after stating to her that he was eager to meet and clear things up, and his failure to return to Georgia, ultimately resulting in his arrest in Virginia. Torres filed a motion in limine to exclude such evidence. The trial court denied the motion, but ruled that the evidence of Torres's pre-arrest conduct would be admissible only for the limited purposes of showing flight and inconsistencies between Torres's statements to the investigator and his behavior. The State then introduced evidence of Torres's pre-arrest conduct through the testimony of the investigator and the tape recording of the phone conversation that she had with Torres, as previously summarized. Prior to the introduction of the recorded phone conversation, the trial court offered to instruct the jury to limit its consideration of the evidence to the issues of flight and inconsistencies between Torres's statements and behavior, but Torres declined the offer.

On appeal, Torres quotes *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991), for the proposition that "in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative"

21

and thus should be categorically excluded. However, the evidentiary rule announced in *Mallory* was not imposed as a constitutional requirement,[6] see id. at 629-630 (5), and our Supreme Court recently held that "*Mallory's* categorical, bright-line rule excluding all comment upon a defendant's silence or failure to come forward as far more prejudicial than probative was abrogated by the new Evidence Code." (Citation, punctuation, and footnote omitted.) *State v. Orr*, 305 Ga. 729, 739 (3) (827 SE2d 892) (2019). Instead, "careful attention must now be paid to the specific evidence offered and the specific theory and rules the proponent of that evidence contends authorize its admission" under the new Evidence Code, which is applicable in the present case.[7] Id. at 741 (4) (a).

---

[6] Torres does not argue that the introduction of evidence of his pre-arrest failure to meet with the investigator was prohibited by the federal or state constitution, and thus that issue is not before us. As noted by the Supreme Court of Georgia in *Orr*, "the United States Supreme Court has not decided whether evidence of a defendant's silence before custodial interrogation or before being advised of or invoking the right to remain silent is admissible under the federal Constitution as substantive evidence, rather than only to impeach a defendant who testifies at trial," and "[t]he federal circuit courts and state high courts are divided on this issue, and some state high courts have excluded such evidence under their state constitutions." *Orr*, 305 Ga. at 734 (2), n. 4 (citing cases).

[7] Georgia's new Evidence Code applies to trials commenced on or after January 1, 2013. See Ga. L. 2011, p. 99, § 101. Torres's jury trial was in May 2017.

Torres further contends that the even if the categorical rule imposed by *Mallory* has been abrogated, evidence of his pre-arrest failure to come forward to speak with the investigator should have been excluded under *Orr* because it did not meet the requirements of an adoptive admission under OCGA § 24-8-801 of the new Evidence Code.[8] But *Orr* made clear that "the adoptive-admission theory is not the only way that evidence of a defendant's silence or failure to come forward might be admissible." *Orr*, 305 Ga. at 741 (4) (a). And, here, the trial court admitted evidence of Torres's pre-arrest conduct to show Torres's flight from Georgia and to show inconsistencies between Torres's statement that he was eager to meet with the investigator to clear things up and his behavior in failing to make any effort to contact

---

[8] Our Supreme Court in *Orr* discussed adoptive admissions under OCGA § 24-8-801:

> Our Rule 801 (a) (2) defines a "[s]tatement" to include the "[n]onverbal conduct of a person, if it is intended by the person as an assertion," and Rule 801 (d) (2) (B) then defines "admissions" not excluded by the hearsay rule when offered against a party to include "[a] statement of which the party has manifested an adoption or belief in its truth." For evidence to qualify as a criminal defendant's adoptive admission under Rule 801 (d) (2) (B), the trial court must find that two criteria were met: first, that the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and second, that there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.

(Citations and punctuation omitted.) *Orr*, 305 Ga. at 740 (4) (a).

the investigator after the Thanksgiving holidays to set up an interview and his decision to travel to Virginia rather than return to Georgia. Such evidence was admissible not as an adoptive admission, but rather as circumstantial evidence of Torres's consciousness of guilt. See id.[9] See also *United States v. Vu*, 378 Fed Appx. 908, 909 (11th Cir. 2010) ("In considering the evidence, it is reasonable for the jury to infer that a defendant's false statement to police demonstrates consciousness of guilt."); *Gray v. State*, 347 Ga. App. 235, 238 (2), n. 4 (817 SE2d 723) (2018) (noting that an attempt to elude the police is circumstantial evidence of consciousness of guilt). Accord *Lawton v. State*, 340 Ga. App. 903, 906 (3) (798 SE2d 264) (2017) (physical precedent only) (holding that introduction of evidence of defendant's pre-arrest flight to another state and of his failure to meet with a law enforcement officer

---

[9] The Supreme Court pointed out in *Orr*:
Certain aspects of a defendant's failure to come forward to the police might also be offered not as a particular assertive statement subject to the hearsay rules, but rather as circumstantial evidence of guilt. As the Eleventh Circuit has recognized, "[i]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, [is] admissible as evidence of consciousness of guilt, and thus of guilt itself." *United States v. Borders*, 693 F2d 1318, 1324-1325 (11th Cir. 1982) (citation omitted). See also *Renner v. State*, 260 Ga. 515, 517 (397 SE2d 683) (1990) ("The fact that a suspect flees the scene of a crime points to the question of guilt in a circumstantial manner.").
*Orr*, 305 Ga. at 741 (4) (a).

after agreeing to do so did not violate *Mallory*).[10] Accordingly, Torres has failed to show any abuse of discretion by the trial court.

5. Torres argues that the trial court erred in failing to grant a mistrial after a witness referred to Torres's pretrial incarceration on the current charges. We disagree.

As previously noted, Torres's stepsister testified about how Torres sexually assaulted her when she was 12 years old. When asked by the prosecutor how she came to the decision to contact the prosecutor about that incident, the stepsister testified that she decided to come forward after she learned that Torres had been in jail for several months and looked up the charges against him on the county website. Torres then moved for a mistrial based on the stepsister's reference to the fact that he had been in jail on the current charges. The trial court denied the motion for mistrial, but the court instructed the jury to disregard the testimony that Torres had been in jail

---

[10] In *Orr*, the Supreme Court explained that even if evidence of a criminal defendant's pre-trial silence or failure to come forward is deemed properly admissible, the evidence still might be subject to exclusion under the balancing test set forth in OCGA § 24-4-403, a statute or constitutional provision, or some other specific exclusionary rule found in the new Evidence Code. *Orr*, 305 Ga. at 741-742 (4) (b). However, Torres does not argue on appeal that the specific evidence of his pre-arrest failure to come forward should have been excluded under the balancing test of OCGA § 24-4-403, under a statute or constitutional provision, or under any of the new Evidence Code's other specific exclusionary rules.

as "irrelevant and immaterial" and admonished the prosecutor not to elicit any further testimony on that issue.

"The decision of whether to deny a mistrial is within the discretion of the trial court, and this Court will not disturb the ruling on appeal unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Abney v. State*, 306 Ga. App. 448, 453 (2) (831 SE2d 778) (2019). We discern no abuse of discretion by the trial court under the circumstances here. "It is well-settled that there is no inherent prejudice associated with the fact that the defendant has been in jail in connection with the case for which he is being tried." *Mallery v. State*, 342 Ga. App. 742, 746 (b) (805 SE2d 257) (2017). See *Rivers v. State*, 296 Ga. 396, 402 (6) (768 SE2d 486) (2015) (noting that "evidence that an accused has been confined in jail in connection with the case at issue does not place his character in evidence"). Furthermore, the trial court gave a curative instruction in which it specifically instructed the jury to disregard the jail-related testimony, and a trial court generally "has the discretion to decide whether a mistrial is the only corrective measure to take or whether proper instructions withdrawing the testimony from the jury's consideration can correct the prejudicial effect." *Sanders v. State*, 290

Ga. 445, 448 (4) (721 SE2d 834) (2012). Consequently, Torres has failed to show any abuse of discretion by the trial court in denying his motion for a mistrial.

6. Torres maintains that the trial court erred in failing to merge two counts of incest for sentencing purposes. We disagree.

Under Georgia law, a person commits the offense of incest when he engages in sexual intercourse or sodomy with a person whom he knows he is related by blood or marriage, which includes the relationship of father and child. OCGA § 16-6-22 (a) (1).[11] OCGA § 16-6-22 (b)[12] addresses punishment and provides that a person convicted of incest shall be sentenced from 10 to 30 years in prison. However, if the victim was under 14 years old, the trial court must impose an enhanced sentence from 25 to 50 years in prison. Id.

---

[11] OCGA § 16-6-22 (a) was amended, effective May 20, 2010, to, among other things, include engagement in sodomy as defined by OCGA § 16-6-2 within the definition of the crime of incest. Ga. L. 2010, p. 168, §§ 3, 16.

[12] OCGA § 16-6-22 (b) provides:

A person convicted of the offense of incest shall be punished by imprisonment for not less than ten nor more than 30 years; provided, however, that any person convicted of the offense of incest under this subsection with a child under the age of 14 years shall be punished by imprisonment for not less than 25 nor more than 50 years. Any person convicted under this Code section of the offense of incest shall, in addition, be subject to the sentencing and punishment provisions of Code Section 17-10-6.2.

In the present case, Count 2 of the indictment alleged that Torres committed incest by having sexual intercourse with his biological daughter, "a child under the age of 14," "between the 1st day of August, 2008, and the 24th day of August, 2012, the exact date of the offense being unknown to the Grand Jury." Count 3 alleged that Torres committed incest by having sexual intercourse with his biological daughter, "a child over the age of 14," "between the 25th day of August, 2012, and the 30th day of November, 2014, the exact date of the offense being unknown to the Grand Jury." Count 4 alleged that Torres committed incest by engaging in sodomy with his biological daughter, "a child under the age of 14," "between the 20th day of May, 2010, and the 24th day of August, 2012, the exact date of the offense being unknown to the Grand Jury." Count 5 alleged that Torres committed incest by engaging in sodomy with his biological daughter, "a child over the age of 14," "between the 25th day of August, 2012, and the 30th day of November, 2014, the exact date of the offense being unknown to the Grand Jury." After the jury found Torres guilty on all four counts, the trial court sentenced him to consecutive sentences of 50 years in prison on Count 2; 30 years in prison on Count 3; 50 years in prison on Count 4; and 30 years in prison on Count 5.

On appeal, Torres argues that the trial court should have merged Count 2 with Count 3 (both of which alleged sexual intercourse with the victim), and Count 4 with Count 5 (both of which alleged sodomy with the victim), because the range of dates of the offenses set forth in the indictment were not material averments and each pair of counts otherwise were identical. It is true that "[i]f the counts in the indictment are identical except for the dates alleged, and the dates were not made essential averments, only one conviction can stand." (Citation and punctuation omitted.) *Jones v. State*, 333 Ga. App. 796, 800 (2) (777 SE2d 480) (2015) (holding that the "dates alleged in [two counts] were not made material averments of the indictment, and therefore [defendant] may be sentenced on only one of the two counts"). "To make such dates a material allegation, the indictment must *specifically allege* that the date of the offense is material." (Citations and punctuation omitted; emphasis supplied.) *Thomas v. State*, __ Ga. App. __ (1) (a) (Case No. A19A1195, decided Oct. 29, 2019) (overruling cases that had "allow[ed] allegations of different dates in different counts to qualify as material averments without requiring language to that effect"). And, here, the indictment did not specifically allege that the dates of the incest were material.

However, the fact that the ranges of dates were not material averments does not end the merger analysis. "Where an averment in one count of an accusation or indictment distinguishes it from all other counts, either by alleging *a different set of facts* or a different date which is made an essential averment of the transaction, the State may on conviction punish the defendant for the various crimes." (Citation and punctuation omitted; emphasis supplied.) *Simmons v. State*, 271 Ga. App. 330, 332 (2) (609 SE2d 678) (2005). Irrespective of whether the ranges of dates were made material averments of the pairs of incest counts, each pair of counts did not otherwise allege identical facts. Count 2 alleged sexual intercourse with the victim when she was *under fourteen*, while Count 3 alleged sexual intercourse with the victim when she was *over fourteen*. Count 4 alleged sodomy with the victim when she was *under fourteen*, while Count 5 alleged sodomy with the victim when she was *over fourteen*.

Whether the victim was over or under 14 years old was a material factual distinction between the counts because of the sentencing scheme for incest under which the mandatory minimum and maximum sentences are increased if the victim was under 14 years old. See OCGA § 16-6-22 (b). As the United States and Georgia Supreme Courts have explained, any fact that increases the mandatory minimum or maximum sentence for a crime is an essential element of the crime that must be found

30

by the jury beyond a reasonable doubt. See *Alleyne v. United States*, 570 U. S. 99, 115-116 (III) (B) (133 SCt 2151, 186 LE2d 314) (2013) (any fact that increases the mandatory minimum sentence for a crime must be submitted to a jury and proven beyond a reasonable doubt); *Apprendi v. New Jersey*, 530 U. S. 466, 490 (IV) (120 SCt 2348, 147 LE2d 435) (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Nordahl v. State*, 306 Ga. 15, 21-22 (2) (829 SE2d 99) (2019) (pointing out Sixth Amendment principles enunciated by United States Supreme Court in *Alleyne* and *Apprendi*); *Jeffrey v. State*, 296 Ga. 713, 718 (3) (770 SE2d 585) (2015) (in comparing elements of offenses for purposes of merger analysis, Supreme Court emphasized that "under the Sixth Amendment and the Due Process Clause, any fact that serves to enhance a mandatory minimum sentence is an element of the crime that must be found by a jury beyond a reasonable doubt"). Hence, apart from the ranges of dates, Counts 2 and 4 alleged an additional material fact that had to be submitted to the jury and proven beyond a reasonable doubt – that the victim was under 14 years of age – that distinguished those two counts from Counts 3 and 5, which alleged that the victim was over 14 years of age. Accordingly, because the pairs of incest counts did not

31

allege identical material facts, Count 2 did not merge with Count 3, and Count 4 did not merge with Count 5.[13] See *Simmons*, 271 Ga. App. at 332 (2). Cf. *Terrell v. State*, 245 Ga. App. 291, 292 (1) (536 SE2d 528) (2000) (although State did not have to prove that crime of child molestation occurred within the range of several months alleged in the indictment because those dates were not made a material averment of the indictment, the State still had to prove that the victim was under 16 years old at the time of the molestation because that was a separate, essential element of the crime). The trial court thus did not err by not merging Torres's incest convictions.

---

[13] In *Jones*, 333 Ga. App. at 799-800 (2), this Court held that two counts of incest merged because the counts alleged identical facts and the alleged date ranges were not made material averments of the indictment. In a footnote, we pointed out that one of the two incest counts additionally alleged that the victim was under 14 years old but concluded that the "additional element [was] not relevant to our analysis." Id. at 800 (2), n. 2. However, in *Jones*, unlike in the present case, "[t]he trial court charged the jury that the indictment did not state that the date of the offense was a material element of the crime, and that it was sufficient that the State show that the offense occurred within the seven years before the indictment was filed regardless of the date listed on the indictment." Id. at 800 (2). Based on this instruction allowing a seven-year window for acts that could form the basis for the convictions, the jury could have found the defendant guilty *on both counts* for acts of incest that occurred when the victim was under 14 years old. Thus, whether the victim was over or under 14 years old was not a material distinction between the counts under the circumstances of that case.

Nevertheless, although not raised by Torres on appeal,[14] we conclude that his sentences on the four incest counts are void because they do not each include a split sentence of incarceration and probation as required by the former version of OCGA § 17-10-6.2 (b) applicable at the time he committed those offenses.[15] See *State v. Riggs*, 301 Ga. 63, 64-67 (1) (799 SE2d 770) (2017). Accordingly, we must vacate

---

[14] See *Hardin v. State*, 344 Ga. App. 378, 389-390 (2) (810 SE2d 602) (2018) (vacating each of defendant's sentences that did not include split sentence required by former OCGA § 17-10-6.2 (b), including one count that defendant did not challenge on appeal). See also *Hughes v. State*, 341 Ga. App. 594, 597-598 (3) (802 SE2d 30) (2017) (per curiam) (vacating defendant's sentence for statutory rape that failed to include split sentence required by former OCGA § 17-10-6.2 (b), even though the defendant did not raise the issue on appeal).

[15] The version of OCGA § 17-10-6.2 (b) in effect at the time of Torres's offenses provided in relevant part:

> [A]ny person convicted of a sexual offense shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to the offense. No portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court and such sentence shall include, in addition to the mandatory imprisonment, an additional probated sentence of at least one year. . . .

Incest is one of the sexual offenses subject to the sentencing requirements imposed by OCGA § 17-10-6.2 (b). See OCGA §§ 16-6-22 (b); 17-10-6.2 (a) (8). In 2017, the General Assembly amended OCGA § 17-10-6.2 (b), effective on July 1, 2017, to require that only the final consecutive sentence imposed contain a split sentence, see Ga. L. 2017, p. 489, § 5, but courts must apply the version of the statute applicable at the time Torres committed his crimes. See *Martinez-Chavez v. State*, __ Ga. App. __ (1) (834 SE2d 139) (2019); *Hardin*, 344 Ga. App. at 388-389 (2).

33

Torres's sentences imposed on his incest convictions and remand for resentencing on those four counts consistent with former OCGA § 17-10-6.2 (b). See *Cruz v. State*, 346 Ga. App. 802, 803 (1) (815 SE2d 311) (2018).

*Judgment of conviction affirmed, sentence vacated in part, and case remanded for resentencing. Mercier and Brown, JJ., concur.*